IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS SEPÚLVEDA-CONTRERAS, | |
| Petitioner, | |
| v. | CIV. NO. 16-2236 (SCC) |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**OPINION AND ORDER**

Luis Sepúlveda-Contreras has filed a petition under 28 U.S.C. § 2255, asking the Court to vacate his sentence on the ground that the career-offender guideline's residual clause was unconstitutionally vague during the mandatory-guidelines regime in place when he was sentenced. Docket Nos. 1, 6. Because he has failed to show that the sentencing judge's decision to apply the offense level from that guideline prejudiced him, we deny his petition.

**I.**

A grand jury charged Sepúlveda with one count of carjacking resulting in serious bodily injury, in violation of 18 U.S.C. § 2119(2). Indictment, United States v. Torres-Colón,

No. 02-cr-411 (D.P.R. Oct. 10, 2002). He pleaded guilty. Minute Entry, United States v. Torres-Colón, No. 02-cr-411 (D.P.R. Sept. 17, 2003). The sentencing judge designated him a career offender under USSG § 4B1.1,[1] which subjects defendants to a higher offense level and criminal history category when they have, as relevant here, at least two prior felony convictions for crimes of violence. Section 4B1.2 contains three clauses that define a crime of violence. The first, called the force clause, states that a crime of violence is an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S. Sent'g Guidelines Manual § 4B1.2(a)(1) (U.S. Sent'g Comm'n 2002). The second, titled the enumerated-offense clause, lists certain offenses that are crimes of violence. *Id.* § 4B1.2(a)(2). Finally, the third, named the residual clause, says that a crime of violence is an offense that "involves conduct that presents a serious potential risk of

---

1. The Court sentenced Sepúlveda pursuant to the 2002 Federal Sentencing Guidelines Manual. So those are the guidelines that we reference here.

physical injury to another." *Id.* Neither the sentencing judge nor the Presentence Report ("PSR") specified which of his prior convictions served as the crime-of-violence predicates for his career-offender designation nor which clause they fell under. But Sepúlveda contends that his predicate offenses must have fallen under the residual clause. *See* Docket No. 6, pg. 19. Based on a criminal history category of VI and total-offense level of 31, the guidelines provided a sentencing range of 188 to 235 months' imprisonment. The judge sentenced him to 235 months' imprisonment and 5 years' supervised release. Sepúlveda appealed, and the First Circuit vacated some of his supervised-release conditions. *United States v. Sepúlveda-Contreras*, 466 F.3d 166, 173 (1st Cir. 2006). But his sentence otherwise remained intact.

On June 23, 2016, Sepúlveda filed a § 2255 petition seeking relief based on *Johnson v. United States*, 576 U.S. 591 (2015). *Johnson* held that the Armed Career Criminal Act's ("ACCA") residual clause is unconstitutionally vague. *Id.* at 597. And *Welch v. United States*, 578 U.S. 120 (2016), made this

rule retroactively applicable on collateral review. *Id.* at 135. Section 4B1.2's residual clause is identical to the ACCA's. In *Beckles v. United States*, 137 S. Ct. 886 (2017), the U.S. Supreme Court considered whether § 4B1.2's residual clause is also unconstitutionally vague. It answered no but only because the now-advisory guidelines are not subject to vagueness challenges. *Id.* at 897. For they merely guide the district court's exercise of its sentencing discretion rather than fix the sentencing range. *See id.* at 894. The Court left open the question of whether the mandatory-guidelines regime is subject to vagueness challenges. Sepúlveda argues that it is and that § 4B1.2's residual clause is unconstitutionally vague.

## II.

A prisoner in federal custody may petition the court for post-conviction relief if his sentence "was imposed in violation of the Constitution or laws of the United States." § 2255(a). A petition must be filed within one year of, as relevant here, the date the Supreme Court initially recognized the right asserted if the Court has made it "retroactively

applicable to cases on collateral review." § 2255(f)(3). Sepúlveda contends that because *Johnson* announced a new right, which he now asserts, and *Welch* made that right retroactively applicable on collateral review, his petition is timely. Docket No. 6, pg. 4. We agree: The Court published *Johnson* on June 26, 2015, Sepúlveda filed his petition on June 23, 2016, and he "'asserts' the same right 'newly recognized' in *Johnson*." *Shea v. United States*, 976 F.3d 63, 71 (1st Cir. 2020) (holding "*Johnson* dictates the rule [petitioner] asserts: namely, that [the career-offender guideline's] residual clause was unconstitutionally vague and could not be applied to enhance the permissible range of sentences a judge could impose, as [petitioner] claims it did in his case," thus "his petition (filed within a year of that decision) [is] timely").

## III.

We first resolve a threshold issue: whether a departure was available to Sepúlveda. Recall that defendants cannot bring vagueness challenges against the advisory-guidelines regime because it merely guides a district court's sentencing

discretion rather than fixes the sentencing range. Sepúlveda seeks resentencing on the ground that the career-offender guideline's residual clause was unconstitutionally vague during the mandatory-guidelines regime. But there is a wrinkle. In *Shea*, the First Circuit explained that if no departure was available, the career-offender guideline's residual clause was unconstitutionally vague because it behaved as "'a law regulating private conduct by fixing permissible sentences' that did not 'provide notice[] and avoid[] arbitrary enforcement.'" 976 F.3d at 81–82. It noted, however, that this might not be so if a departure was available. *Id.* at 81 ("[E]ven if jurists might reasonably debate whether the [*Johnson*] rule . . . would apply to a defendant who, in addition to [being designated a career offender], was eligible for a departure, they could not reasonably disagree that *Johnson* applies when the . . . residual clause fixed the permissible sentences.").

The government argues that a departure was available to Sepúlveda because he asked for one. Docket No. 21, pg. 11.

To be sure, he asked the judge to downwardly depart on the ground that the conduct underlying his career-offender designation was less serious than the normal career offender's conduct. Transcript of Sentencing at 4–5, United States v. Torres-Colón, No. 02-cr-411 (D.P.R. June 14, 2004) (citing § 4A1.3). But his PSR did not identify any grounds for a departure. Sepúlveda Presentence Rep. at 14. And the government argued at sentencing that he is "exactly the kind of individual that th[e] [career-offender] guideline was crafted" for. Transcript of Sentencing at 7, United States v. Torres-Colón, No. 02-cr-411 (D.P.R. June 14, 2004). Declining to depart, the judge said, "[T]he court will exercise its discretion and will not entertain a downward departure on those grounds." *Id.* at 8. Favorable to the government's position here, he might have meant that a departure was available but declined to grant one. But he also might have meant that he would not consider departing on those grounds or that those grounds did not justify a departure. Read with the PSR's statement that there were no grounds for a

departure and the government's insistence at sentencing that Sepúlveda is exactly the type of person that the career-offender guideline was crafted for, we think the fairest reading is that judge did not believe that there were any grounds for a departure.[2] So he may challenge the career-offender guideline's residual clause on vagueness grounds.

## IV.

Having established that Sepúlveda can bring his vagueness challenge, we turn to whether he has procedurally defaulted it. In its response to his petition, the government

---

2. In *United States v. Pérez*, 160 F.3d 87 (1st Cir. 1998) (en banc) (per curiam), the First Circuit split in half on the issue of whether a departure is available to a career offender under § 4A1.3 on the ground that his career-offender designation over-represents the seriousness of his criminal history. "Half the court believes . . . that the [U.S. Sentencing] Commission's clear intention is a categorical ban on downward departures for size, while the other thinks that there may be an occasional case where smallness [or comparatively minor criminal history] may form the basis for a departure." *Id.* at 88–89. Based on this caselaw (which Sepúlveda's counsel mentioned at sentencing) and the fact that he had a criminal history category of VI separate from the career-offender guideline, it is unlikely that the judge would have believed that this is one of those occasional cases where the smallness of criminal-history conduct justifies a departure.

raised procedural default and contended that he had "waived" any argument against it by failing to preemptively negate it. Docket No. 21, pg. 8. To be sure, because he is bringing his vagueness challenge for the first time on collateral review, he "must show both 'cause' that excuses the procedural default and 'actual prejudice' resulting from the alleged error." *Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015). But the government is wrong that he has failed to argue cause and prejudice, *see* Docket No. 1, pg. 4; Docket No. 6, pgs. 2–3, and wrong that he has waived them by failing to preemptively show them.

Procedural default is an affirmative defense, so a petitioner is not required to negate it until the government has raised it. *See Oakes v. United States*, 400 F.3d 92, 98 (1st Cir. 2005) (stating "procedural default is an affirmative defense, and a plaintiff generally is not required to negate an affirmative defense unless and until the defendant has placed it in issue" and "[t]hat rule applies foursquare in habeas cases"). Sepúlveda filed his petition in 2016, Docket No. 1,

which the Federal Public Defender supplemented in 2017, Docket No. 6. The government filed its response in 2022. Docket No. 21. He was not required to anticipate that the government would raise procedural default almost six years beforehand. When the government raised procedural default in its response, we invited him to file a supplemental brief to address some concerns that we had about his ability to show cause and prejudice. Docket No. 22. He chose not to. With that said, we turn to cause.

Cause exists when the petitioner "can show that some objective factor external to the defense impeded counsel's efforts" to raise the claim, such as when "the factual or legal basis for a claim was not reasonably available." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Sepúlveda says that he could not have raised his vagueness challenge earlier because the legal basis for it (*i.e.*, *Johnson*'s rule) is new. Docket No. 1, pg. 4. The government counters that while his challenge may have been unexpected before *Johnson*, it was not unavailable. Docket No. 21, pg. 9. Wielding *Bousley v. United States*, 523

U.S. 614 (1998), it argues that the Court "has never recognized futility as 'cause' to excuse procedural default." Docket No. 21, pgs. 8–9 ("[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" (quoting *Bousley*, 523 U.S. at 623)). Because vagueness challenges were not novel during his direct appeal, its argument goes, he is not excused from failing to raise one. *Id.* at 9. It then asks us to follow *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021), where the Eleventh Circuit held that the petitioner had procedurally defaulted his *Johnson* claim because, before *Johnson,* vagueness challenges were common and Justices had said that they were interested in entertaining such challenges to the ACCA's residual clause. *Id.* at 1286–88.

*Lassend v. United States*, 898 F.3d 115 (1st Cir. 2018), forecloses the government's argument. For it squarely rejected *Granda*'s reasoning and the government's reading of *Bousley*. In an analogous situation to *Granda*—that is, where the petitioner directly appealed after the Court had rejected

vagueness challenges to the residual clause in *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 564 U.S. 1 (2011), but before *Johnson*—*Lassend* held that the petitioner had shown cause for failing to raise a vagueness challenge to the residual clause because, at the time of his direct appeal, *James* and *Sykes* were still good law, so they foreclosed that challenge. 898 F.3d at 122–23. *Lassend* distinguished situations where the legal basis for a claim is not reasonably available from those where the claim is unacceptable. *See id.* The former is true when the Court "explicitly overrule[s] one of [its own] precedents" or "overtur[ns] a longstanding and widespread practice to which [the] Court ha[d] not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved." *Id.* at 123 (quoting *Reed v. Ross*, 468 U.S. 1, 17 (1984)). In these situations, a petitioner "has cause for procedurally defaulting a constitutional claim" because it was "'so novel that its legal basis [wa]s not reasonably available to counsel' at the time of the default." *Id.* at 122 (quoting *Reed*, 468 U.S. at 16). But in the latter situation—*i.e.*, where the claim

is merely unacceptable to a court rather than based on a constitutional right created by the Supreme Court overruling one of its own precedents or a longstanding, widespread practice—the petitioner's counsel is not excused from failing to raise the claim. *See id.* at 122–23.

The government's *Bousley* argument is out of place here because Sepúlveda's vagueness challenge was not merely unacceptable. Instead, it was not reasonably available. His case is distinguishable from *Granda* and *Lassend* because he directly appealed before *James*, *Sykes*, and *Johnson*. Because the precedents that *Johnson* overruled did not exist during his direct appeal, *see James v. United States*, 550 U.S. 192 (2007), *overruled by Johnson v. United States*, 576 U.S. 519 (2015); *Sykes v. United States*, 564 U.S. 1 (2011), *overruled by Johnson v. United States*, 576 U.S. 519 (2015), he does not fall within the first situation where a constitutional challenge is not reasonably available because Supreme Court precedent foreclosed it. But he does fall within the second one. At the time of his direct appeal, every court of appeals that had considered some form

of vagueness challenge to the ACCA's definition of crime of violence rejected it. *See, e.g.*, *United States v. Childs*, 403 F.3d 970, 972 (8th Cir. 2005); *United States v. Presley*, 52 F.3d 64, 68 (4th Cir. 1995); *United States v. Sorenson*, 914 F.2d 173, 175 (9th Cir. 1990). The government has directed us to no case where such a challenge succeeded, nor have we found one. Because *Johnson* overturned a near-unanimous, longstanding, and widespread practice, Sepúlveda is excused from failing to raise his vagueness challenge during his direct appeal.

In addition to cause, Sepúlveda must show actual prejudice or "'a reasonable probability,' that he would have received a different sentence 'but for the alleged error.'" *Bartolomeo v. United States*, 960 F.3d 34, 45–46 (1st Cir. 2020) (first quoting *Strickler v. Greene*, 527 U.S. 263, 289 (1999); and then quoting *Wilder*, 806 F.3d at 658). If the sentencing judge had not applied the offense level from the career-offender guideline, he contends, his total-offense level would have been 28 and his sentencing range would have been 140 to 175 months' imprisonment rather than 31 and 188 to 235 months'

imprisonment. Docket No. 6, pg. 3. The government disagrees. Based on his co-defendant's total-offense level, it says that his total-offense level would have been higher. And thus he cannot show actual prejudice because he benefitted from any error that occurred.

"[W]e think that the prejudice inquiry dovetails with the merits inquiry." *Lassend*, 898 F.3d at 123. That is because to succeed on the merits, Sepúlveda must establish "'by a preponderance of the evidence' that his 'sentence rested on the residual clause.'" *Shea*, 976 F.3d at 82. And if it did not, "there cannot be actual prejudice because there would be no error from which such prejudice would flow." *Lassend*, 898 F.3d at 123. So we will first decide whether his sentence rested on the career-offender guideline's residual clause and then, if it did, whether actual prejudice flowed from that error.

## V.

Before beginning our analysis, we note that the government chose not to brief the merits. Docket No. 13 ("The Government shall respond to the merits of Petitioner's *Johnson*

motion."); Docket No. 21, pg. 12 ("Because Sepúlveda-Contreras cannot bypass procedural default, we need not discuss the question of whether his previous convictions still qualify as crimes of violence."). Our analysis therefore lacks the benefit of adversarial briefing.

Sepúlveda argues that the sentencing judge relied on the residual clause when he designated him a career offender because his prior convictions do not satisfy the force clause or the enumerated-offense clause. He has convictions for attempted murder, aggravated liberty restriction, robbery, attempted robbery, Puerto Rico weapons law violations, receipt of stolen property, and escape. Sepúlveda Presentence Rep. at 6–7. He contends that the only ones that could have served as crime-of-violence predicates[3] are attempted murder, robbery, attempted robbery, and escape. Docket No.

––––––––––––––––––––

3. His PSR appears to say that his robbery and receipt-of-stolen property convictions are his crimes of violence because when describing only those offenses, it states, "the defendant, by using force or violence," committed them. Sepúlveda Presentence Rep. at 7. But we do not know if those were the two that the sentencing judge relied on.

6, pgs. 2–3 & n.2–3. Because he need only prove that three of these four offenses are not crimes of violence (since a career-offender designation requires two), he focused his briefing on robbery and escape.

We begin with Puerto Rico robbery.[4] There are three ways that an offense can constitute a crime of violence: It can satisfy the enumerated-offense clause, force clause, or residual clause. The enumerated-offense clause states that "burglary of a dwelling, arson, . . . extortion, [and offenses that] involve[] [the] use of explosives" are crimes of violence. USSG § 4B1.2(a)(2). Robbery is not among these, so it is not a crime of violence under that clause. The fact that application note 1 lists robbery as a crime of violence does not impact our enumerated-offense-clause analysis. *Cf. United States v. Ball*,

---

4. This analysis covers robbery and attempted robbery because crimes of violence include attempts to commit them. U.S. SENT'G GUIDELINES MANUAL § 4B1.2 application n.1 (U.S. SENT'G COMM'N 2002). And Puerto Rico attempt matches the generic definition of attempt. *United States v. Benítez-Beltrán*, 892 F.3d 462, 468 (1st Cir. 2018) (concluding that Puerto Rico attempt is no broader than generic attempt). *Compare* Art. 26, 1974 P.R. Penal Code (attempt), *with* Model Penal Code § 5.01(1)–(2) (attempt).

870 F.3d 1, 3 (1st Cir. 2017) (explaining that an offense is a crime of violence under the enumerated-offense clause if it is "enumerated by name in § 4B1.2(a)(2)").

The force clause provides that a crime of violence is one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.1(a)(1). Common-law robbery satisfies this clause. *Stokeling v. United States*, 139 S. Ct. 544, 555 (2019). The first step to determine whether Puerto Rico robbery does as well is to decide whether that provision is indivisible or divisible. *King v. United States*, 965 F.3d 60, 65 (1st Cir. 2020) (quoting *United States v. Faust*, 853 F.3d 39, 51–52 (1st Cir. 2017)). A provision is indivisible when it "sets out a single (or 'indivisible') set of elements to define a single crime." *Mathis v. United States*, 579 U.S. 500, 504–05 (2016). And it is divisible when it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Id.* at 505. So if a provision lists alternatives, we must decide whether those alternatives are elements (and thus the provision defines multiple crimes) or

factual means of committing the offense (and thus the
provision defines one crime). Elements are the parts of the
crime that the government "must prove to sustain a
conviction." *Id.* at 504 (quoting Black's Law Dictionary 634
(10th ed. 2014)). Means, in contrast, "spell[] out various
factual ways of committing some component of the offense—
a jury need not find (or a defendant admit) any particular
item." *Id.* at 506. If the provision is indivisible, we decide
whether it is a crime of violence by lining up its elements
alongside the generic offense's elements to see if they are a
categorical match. *Id.* Things get more complicated if the
provision is divisible. If it is divisible, we apply the modified
categorical approach. Under that approach, we "look[] to a
limited class of documents (for example, the indictment, jury
instructions, or plea agreement and colloquy) to determine
what crime, with what elements, a defendant was convicted
of." *Id.* at 505–06. Once we know that, we can compare that
crime with the relevant generic offense. *Id.* at 506.

When Sepúlveda was convicted of robbery, Article 173 of the 1974 Puerto Rico Penal Code stated, "Every person who unlawfully appropriates the personal property belonging to another for himself, whether taking it from his person or from the person having possession thereof, in his immediate presence and against his will, by means of violence or intimidation, shall be punished by imprisonment for a fixed term of twelve (12) years." *Puerto Rico v. Batista-Montañez*, 13 P.R. Offic. Trans. 401, 402 (1982) (quoting P.R. LAWS ANN. tit. 33, § 4279). "[B]y means of violence or intimidation" is a list of alternatives, so the first step of our analysis is to decide whether violence and intimidation are elements or means. This is an easy question because the provision gives us the answer: It says that violence and intimidation are means and provides only one punishment. *Cf. Mathis*, 579 U.S. at 518 (stating "the statute on its face may resolve the issue" and if alternatives "carry different punishments, then . . . they must be elements"). Moreover, jury instructions for the 2004 provision (which insignificantly amended the 1974

provision), provide: "Although the law requires that the taking or appropriation be done by way of violence or intimidation, it is not necessary that both be used. It is sufficient that one of them be used, violence or intimidation, for it to be understood that the crime has been committed." Docket No. 6-2, pg. 1. Since these instructions state that the jury need only find violence or intimidation to convict someone of robbery, they are factual means or different ways of committing the same crime.

As an indivisible provision, Puerto Rico robbery is subject to the categorical approach. At common-law, the level of force required to commit robbery is force sufficient "to overcome resistance." *Stokeling*, 139 S. Ct. at 551. The key distinction between common-law robbery and common-law larceny is that larceny does not require the thief to overcome the victim's resistance. *Id.* at 550. But the resistance need not be great for the crime to be robbery. The resistance can be "however slight," such as where a thief "pull[s] a diamond pin out of a woman's hair [and] t[ears] away hair attached to

the pin." *Id.* Applying the categorical approach to Florida robbery, the Supreme Court concluded that it is a crime of violence under the force clause because it requires the same degree of force as common-law robbery. *Id.* at 555. Florida defines robbery as "the taking of money or other property . . . from the person or custody of another, . . . when in the course of the taking there is the use of force, violence, assault, or putting in fear." *Id.* at 554 (quoting Fʟᴀ. Sᴛᴀᴛ. § 812.13(1)). And the Florida Supreme Court has made clear that robbery requires "resistance by the victim that is overcome by the physical force of the offender"—mere "snatching of property from another" does not suffice. *Id.* at 555 (quoting *Robinson v. State*, 692 So. 2d 883, 886 (Fla. 1997)).

Puerto Rico robbery, in contrast to common-law robbery, does not require force sufficient to overcome the victim's resistance. In *Batista-Montañez*, the Puerto Rico Supreme Court asked whether, "For the purposes of robbery, does the snatching of personal property from a person, without his resistance or awareness, and without causing him

injury, constitute 'violence.'" 13 P.R. Offic. Trans. at 403. It
answered yes. And in doing so, it adopted Massachusetts's
interpretation of its robbery statute, which the First Circuit
has held is not a crime of violence. *See United States v. Starks*,
861 F.3d 306, 319–20 (1st Cir. 2017).

*Batista-Montañez*'s facts are simple: The defendant
asked the victim to give him a quarter. 13 P.R. Offic. Trans. at
402. When he refused and continued walking, the defendant
pulled a chain off his neck. *Id.* The court used this case to lay
out an expansive understanding of violence for purposes of
Puerto Rico robbery. It first recognized that, under the
common-law rule, "the required degree of force to constitute
violence must be higher than that used to obtain possession
of the thing by mere snatching." *Id.* at 404. Next, it discussed
the minority rule, describing one example in detail:
Massachusetts robbery. The court stated that the
Massachusetts's Supreme Judicial Court held, in a case where
the defendant snatched the victim's purse by surprise, leaving
her no chance to resist, that "the degree of force is immaterial

so long as it is sufficient to obtain the victim's property 'against his will.'" *Id.* (quoting *Commonwealth v. Jones*, 362 Mass. 83, 283 N.E.2d 840, 843 (1972)). It then concluded that "the needs of the present Puerto Rican society" are best "represented by . . . the United States minority rule." *Id.* at 408. "[W]e hold," it said, "that robbery by sudden snatching exists in Puerto Rico, that the slightest use of force is sufficient for the commission of the crime, and that the absence of bodily injury . . . , or lack of opportunity to resist violence, do not have the effect of reducing the offense to . . . unlawful appropriation." *Id.* at 410. *Batista-Montañez*, as far as we can tell, is still good law. *See, e.g.*, *Pueblo v. Díaz*, 2015 PR App. LEXIS 818, at *7 (T.C.A. P.R. Cir. Mar. 27, 2015); *Pueblo v. Delgado-Carrión*, 2007 PR App. LEXIS 3174, at *20 (T.C.A. P.R. Cir. Oct. 5, 2007).

That brings us to *Starks*. There, the First Circuit grappled with the language from *Jones* that *Batista-Montañez* quoted and later adopted as Puerto Rico's rule. *See Starks*, 861 F.3d at 318. Using the same understanding of common-law

robbery that *Stokeling* later did, *Starks* concluded that Massachusetts robbery does not satisfy the force clause because it criminalizes mere snatching. *See id.* at 318–20. So it follows that Puerto Rico robbery is not a crime of violence under that clause either because it also covers mere snatchings where the victim does not resist at all. Because common-law robbery (and the force clause, for that matter) requires at least the force necessary to overcome the victim's resistance and Puerto Rico robbery does not, they are not a categorical match and Puerto Rico robbery is not a crime of violence under the force clause. Putting the pieces together, if the sentencing judge relied on robbery or attempted robbery as crime-of-violence predicates for Sepúlveda's career-offender designation, the judge must have done so under the residual clause. And in light of *Johnson*, that was an error.

Recall that, in addition to robbery and attempted robbery, Sepúlveda has convictions for attempted murder, aggravated liberty restriction, Puerto Rico weapons law violations, receipt of stolen property, and escape. Neither

aggravated liberty restriction,[5] weapons law violations,[6] receipt of stolen property,[7] nor escape[8] are listed in the enumerated-offense clause. And none of them include as an element the use, attempted use, or threatened use of physical force. So if the sentencing judge relied on them as crime-of-violence predicates, he did so under the residual clause. Because the career-offender guideline requires two

---

5. Article 131 of the 1974 Puerto Rico Penal Code defined aggravated liberty restriction as committing the offense in Article 130—unlawfully restricting the freedom of another—under aggravating circumstances, such as where the victim is less than sixteen or where the perpetrator pretends to be a public authority or uses violence or intimidation.

6. From the facts provided in the PSR, it appears that Sepúlveda was convicted of possessing a firearm without a license, intimidating someone with a firearm, and restricting someone's liberty by force, violence, and putting a gun to that person's head. It is unclear which provisions of Puerto Rico weapons law he was convicted of violating. *See* Sepúlveda Presentence Rep. at 6.

7. Article 168 criminalized buying, receiving, retaining, transporting, or disposing of property knowing that it was obtained through theft, extortion, or other unlawful means.

8. Article 232 punished anyone who escaped from legal detention, imprisonment, or internment. *Pueblo v. Morales-Roque*, 13 P.R. Offic. Trans. 1128, 113 D.P.R. 876, 879 (1983).

predicates, we need not address whether Puerto Rico attempted murder is a crime of violence. In sum, only one of Sepúlveda's predicate offenses (attempted murder) might be a crime of violence. The rest are not. Thus, the sentencing judge erred by designating him a career offender.

## VI.

We turn to our final inquiry: Did the judge's error designating him a career offender actually prejudice him? The government answers no because, it says, the judge gave him a windfall by applying the offense level from the career-offender guideline. Docket No. 21, pg. 12. This is a curious argument because the offense level provided in that guideline applies only if the offense level there is higher than it otherwise would be. USSG § 4B1.1(b) ("[I]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply."). But in this case, we agree with the government.

Applying the career-offender guideline, the sentencing judge assigned Sepúlveda a criminal history category of VI and a total-offense level of 31. Though a career-offender designation comes with a criminal history category of VI, he was category VI already. Sepúlveda Presentence Rep. at 8. So that designation only affected his offense level. Because the carjacking resulted in serious bodily injury, he was subject to up to twenty-five years' imprisonment, 18 U.S.C. § 2119(2), which triggered an offense level of 34 under the career-offender guideline, USSG § 4B1.1(b)(B). He received a three-level reduction for acceptance of responsibility, resulting in a total-offense level of 31. Based on his co-defendant's total-offense level, the government argues that if the judge had not applied the offense level from the career-offender guideline, Sepúlveda's total-offense level would have been 34. Docket No. 21, pgs. 5–6, 12. He disagrees, saying that his total-offense level would have been 28. Docket No. 6, pg. 3. But he does not explain why. He merely states, "This total offense number takes into account all likely enhancements that [he] would

have received under USSG § 2B3.1." *Id.* at 3 n.5.

Sepúlveda and his co-defendant, Frankie Torres-Colón, committed substantially the same conduct. Torres-Colón, who is not a career offender, had a base-offense level of 20, Torres-Colón Presentence Rep. at 4, and several enhancements: four levels for using a deadly weapon, *id.* at 5 (citing USSG § 2B3.1(b)(2)(D)); six levels because the victim sustained a life-threatening injury, *id.* (citing USSG § 2B3.1(b)(3)(C)); two levels because the offense involved carjacking, *id.* (citing USSG § 2B3.1(b)(5)); two levels for physically restraining someone to commit the offense, *United States v. Torres-Colón*, 156 F. App'x 332, 334 (1st Cir. 2005) (unpublished) (citing USSG § 2B3.1(b)(4)(B)); and two levels for using a minor to commit the offense, *id.* (citing USSG § 3B1.4).[9] He also received a two-level reduction for accepting responsibility. Torres-Colón Presentence Rep. at 5. In total, his

---

9. These last two enhancements are not in the PSR. Torres-Colón appealed them, and the First Circuit affirmed them. *United States v. Torres-Colón*, 156 F. App'x 332, 334 (1st Cir. 2005) (unpublished).

offense level was 34. With a criminal history category of IV and a total-offense level of 34, his sentencing range was 210-262 months' imprisonment. The judge sentenced him to 262 months' imprisonment and 5 years' supervised release. Judgment, United States v. Torres-Colón, No. 02-cr-411 (D.P.R. Feb. 17, 2004). So the judge sentenced both of them to the top of their guidelines ranges, yet Sepúlveda—who had a higher criminal history category and an offense level from the career-offender guideline—received a lesser sentence. The record therefore supports the government's position that he received a windfall from the judge's decision to apply the career-offender guideline's offense level.

Based on the enhancements Torres-Colón received, we are at a loss to decipher which enhancements Sepúlveda contends that he would have received and which he would not have to arrive at a total-offense level of 28. Although they committed substantially the same conduct, there does appear to be some disagreement about who stabbed the victim. Sepúlveda argued at sentencing that Torres-Colón stabbed

the victim twice, rather than each of them once, as the PSR reflects. Transcript of Sentencing at 3, United States v. Torres-Colón, No. 02-cr-411 (D.P.R. June 14, 2004). *But see* Docket No. 1-1, pg. 4 (admitting that he stabbed the victim). And based on this, he said that had he not been subject to the career-offender guideline's offense level, he would have argued for a reduction based on his lesser role in the offense. *Id.* at 15. But he did not make that argument here. And he did not explain at sentencing which enhancements he would or would not have been subject to if the judge had not applied the career-offender guideline's offense level. When the government argued there that absent that guideline's offense level his total-offense level would have been 34, he stated, "[P]erhaps not all the enhancements would have been equally applicable, and I would have argued for a lesser role." *Id.*

The short of it is that Sepúlveda's argument that he was actually prejudiced by his career-offender designation is undeveloped and belied by the record. *Cf. Carey v. United States*, 50 F.3d 1097, 1098 (1st Cir. 1995) ("The court must take

the allegations contained in the petitioner's [§ 2255 petition] as true, except to the extent that 'they are contradicted by the record . . . , and to the extent that they are merely conclusions rather than statements of fact.'" (quoting *Mack v. United States*, 635 F.2d 20, 26–27 (1st Cir. 1980))). He has therefore failed to shoulder his burden to show actual prejudice flowing from the sentencing judge's error designating him a career offender and applying that guideline's offense level to him. *Cf. Lassend*, 898 F.3d at 123 & n.4 (stating to overcome procedural default, petitioner must show "'actual prejudice' resulting from the errors of which he complains" and if his prior convictions were not crimes of violence then he could show actual prejudice because that finding subjected him to a higher statutory minimum sentence and raised his total-offense level); *Shea*, 976 F.3d at 83 ("[B]ecause the rule *Johnson* recognized applies only when the residual clause fixed a higher maximum or minimum sentence . . . , [petitioner] will have to show that it more-likely-than-not did so in his case.").

## VII.

In sum, because Sepúlveda has failed to show actual prejudice flowing from the error he complains of, the Court **DENIES** his § 2255 petition (Docket Nos. 1, 6). But we **GRANT** him a certificate of appealability because he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ("A petitioner satisfies [§ 2253(c)(2)] by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."). We grant him a certificate of appealability as to the following issues: (1) whether a petitioner whose direct appeal concluded before *James*, *Sykes*, and *Johnson* has cause for failing to raise a vagueness challenge to the residual clause during his direct appeal; (2) whether Puerto Rico robbery is a crime of violence under the force clause; and (3) whether a petitioner whose sentencing range would have been higher if the sentencing

judge had not applied the career-offender offense level can show prejudice flowing from the decision to apply that level.

We remind him as well that there are other avenues to seek a reduction of his supervised-release term. He might, for example, consider filing a motion under 18 U.S.C. § 3583(e)(1) asking the Court to terminate his supervised release early.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 2nd day of June 2022.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE